# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Jessica Machelle Anderson                                                                    **Plaintiff**

v.                                        **No. 1:14–CV–012-JLH-HDY**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                          **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition will be sent to U.S. District Judge J.

Leon Holmes.  A party to this dispute may file and serve written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  Failing to object within 14

days may waive the right to appeal questions of fact.[2]  An objecting  party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose,

must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to

_____

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

the magistrate judge, and (3) details and/or copies of any testimony and/or documents

to be proffered at a hearing.  Based on this submission, Judge Holmes will determine

the need for a hearing.

### Reasoning for Recommended Disposition

Jessica Machelle Anderson seeks judicial review of the denial of her second

application for social security disability benefits.[3]  When she first applied for disability

benefits, Anderson worked as a hospital phlebotomist.[4]  She developed Grave's disease,

a thyroid cancer characterized by an over-active thyroid gland.  Anderson's thyroid

cancer was successfully treated, but she failed to return to work after her medical leave

expired.[5]  She was terminated.  Her first application was denied.[6]

Three years later, Anderson reapplied.  By then, she parented a school-aged

disabled son and her incarcerated brother's infant daughter.[7]  She based disability on

diabetes, glaucoma, fibromyalgia, biliary dyskinesia, malaise, severe chronic fatigue,

migraines, abdominal pain, constant nausea, Grave's disease, inability to retain or recall

---

[3]SSA record at pp. 117 & 124 (alleging disability beginning June 1, 2008).

[4]*Id*. at pp. 147 & 165.

[5]*Id*. at p. 319.

[6]*Id*. at p. 142 (first application denied Oct. 9, 2007).

[7]*Id*. at p. 157 (stating that the 13 year old son helps care for two year old niece). *See id*. at pp. 35-36 (testifying that her son receives supplemental security income and her brother is incarcerated).

information, and irritable bowel syndrome.[8]  She claims she has been disabled since

June 1, 2008.  At that time, she was 31 years old.

**The Commissioner's decision**.  After considering the second application, the

Commissioner's ALJ determined Anderson has severe impairments — diabetes

mellitus, obesity, back pain, neck pain with headaches, hip pain, abdominal pain

following the removal of her gallbladder, history of Grave's disease, hypothyroidism

following external radiotherapy, history of central pain processing disorder, depression,

post traumatic stress disorder (PTSD), and anxiety[9] — but she can do some sedentary

work.[10]  Because a vocational expert identified available sedentary work,[11] the ALJ

determined Anderson is not disabled and denied the application.[12]

After the Commissioner's Appeals Council denied a request for review,[13] the

ALJ's decision became a final decision for judicial review.[14]  Anderson filed this case to

---

[8]*Id*. at p. 146.

[9]*Id*. at p. 15.

[10]*Id*. at p. 17.

[11]*Id*. at p. 49.

[12]*Id*. at p. 24.

[13]*Id*. at p. 1.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social
Security Act precludes general federal subject matter jurisdiction until administrative
remedies have been exhausted" and explaining that the Commissioner's appeal

challenge the decision.[15]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[16]

This recommendation explains why substantial evidence supports the decision and why

the ALJ made no legal error.

Anderson's allegations of error.  Anderson contends the ALJ failed to consider

how the combination of her impairments impacts her ability to work.  Given proper

consideration, she says, her impairments prevent all work.  She insists her impairments

impose nonexertional limitations that the vocational expert did not consider in

identifying available work.  She characterizes the ALJ's evaluation of her credibility as

meaningless boilerplate.  For these reasons, she maintains substantial evidence does not

support the ALJ's decision.[17]

Applicable legal principles.  For substantial evidence to support the decision, a

_____

procedure permits claimants to appeal only final decisions).

[15]Docket entry # 1.

[16]See 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[17]Docket entry # 15.

reasonable mind must accept the evidence as adequate to show Anderson can do some sedentary work.[18]  Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[19] Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[20]  The ALJ limited sedentary work by requiring work involving incidental interpersonal contact, tasks learned and performed by rote, few variables, little judgment, and simple, direct, concrete supervision, due to depression and PTSD.  The court must determine whether a reasonable mind would accept the evidence as adequate to show Anderson can work with these limitations.

**Substantial evidence exists**.  When asked why she can no longer work, Anderson described numerous medical problems: worsening eyesight and leg swelling due to diabetes, eye bulging due to Grave's disease, neuropathy, fibromyalgia, osteoarthritis in her hands and knees, joint pain, glaucoma, unpredictable diarrhea,

---

[18]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[19]20 C.F.R. §§ 404.1567(a) & 416.967(a).

[20]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

depression, grinding hip pain, heart palpations, and memory problems.[21]  These

allegations are not enough to prove Anderson is disabled because a determination of

disability must be supported by medical evidence.[22]  The medical evidence does not

support Anderson's allegations because it shows no very serious functional limitation

preventing sedentary work.

The size of the record suggests more impairment than actually exists.  Since

applying for disability benefits, Anderson has seen many medical providers and

underwent numerous diagnostic tests,[23] but treatment records reflect complaints rather

than impairment.  The medical evidence establishes a history of Grave's disease

---

[21]SSA record at pp. 40-47.

[22]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability.").

[23]*See, e.g.*, SSA record at p. 254 (June 2, 2008, negative MRI on lower back), p. 425 (Oct. 8, 2010, esophagogastroduodenoscopy showing inflammation of the pylorus but otherwise normal), p. 455 (Jan. 26, 2009, normal field of vision), p. 286 (Nov. 12, 2009, negative mammogram), p. 292 (Dec. 12, 2009, normal electrocardiogram), p. 305 (Jan. 22, 2010, thyroid ultrasound showing no cold nodules), p. 379 (Aug. 10, 2010, negative CT scan of abdomen), p. 315 (Sept. 22, 2010, ultrasound showing no gallstones), p. 369 (Oct. 12, 2010, lab work showing mild gastritis) & p. 368 (Nov. 2, 2010, CT angiogram, no evidence of peripheral vascular disease).

(hyperthyroidism).  In June 2007, Anderson was treated with radioactive iodine.[24]

When she followed up with her doctor in November 2007, she had applied for disability

benefits.  Her doctor's assessment provides a probative characterization: "I informed

the patient I do not feel she is disabled."[25]

Four and a half years later, Anderson's pain specialist made the following,

similar assessment:

> She began to talk about arthritis, explained she has been seen by a
> rheumatologist so if she had arthritis she would have been treated for
> arthritis.  I do not see signs of arthritis, she has no swelling, no pain in the
> joints. …[H]er body is deconditioned, she is obese, is a chronic smoker all
> of these together can cause pain.… I will not treat her for fibromyalgia.…
> She is walking, is not bedridden, is not crying in pain, she does not have
> malignancy, her pain is not severe, she is laughing.[26]

The medical evidence generated in the interim is consistent with these assessments.

After reviewing the medical evidence, agency medical experts opined that

Anderson can do medium work,[27] but the ALJ limited her to sedentary work due to

obesity and mild-to-moderate pain.[28]  Although the medical evidence reflects no very

---

[24]*Id.* at pp. 239-40.

[25]*Id.* at p. 230.

[26]*Id.* at p. 687.

[27]*Id.* at pp. 500-07 (physical residual functional capacity assessment: medium
work, avoid foot controls) & p. 513 (affirming earlier assessment).

[28]*Id.* at p. 17.

serious functional limitation, the pain specialist's assessment supports the reduction

because obesity and pain can limit function.[29]  Anderson's other impairments provide

no basis for further reduction.

**Other impairments provide no basis for disability because the impairments**

**can be controlled with treatment**.  "An impairment which can be controlled by

treatment or medication is not considered disabling."[30]  Anderson's doctors have

prescribed medication and life style changes to improve her symptoms.[31]  The

prescribed treatment reflects medical opinion that Anderson's impairments can be

controlled by treatment or medication.

Anderson complains about swelling in her legs, but her doctors have observed a

---

[29]*See SSR 02-1p: Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity*; 20 C.F.R. §§ 404.1545(e) & 416.945(e) ("Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone….").

[30]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[31]*See, e.g.*, SSA record at p. 320 (May 21, 2008) (recommend sleep study, aggressive daily exercise and weight loss; patient seemed somewhat resistant), p. 236 (Feb. 6, 2009, recommend cessation of smoking; cause vocal cord irritation), p. 560 (Nov. 29, 2011, providing options for pain management), p. 577 (Feb. 9, 2012, medications for complaints of continued diarrhea after removal of gallbladder) & p. 687 (Apr. 13, 2012, recommendations for weight loss, exercise, cessation of smoking, diet changes, and vitamins for pain management).

minimal amount of swelling.[32]  She complains about headaches, but diagnostic testing

has been negative.[33]  She relies on fibromyalgia, but the rheumatologist ruled out

fibromyalgia.[34]  She insists hip pain interferes with walking, but she has a normal gait.[35]

She complains about memory and comprehension problems, but she "has the ability to

understand, carry out and remember basic work-like tasks."[36]  She claims she has

constant, relentless pain throughout her body, but she "has unrealistic expectations of

pain relief and seems to concentrate all her mental energies on going to various

--------

[32]*Id*. at p. 346 (Oct. 26, 2009, trace swelling in legs), p. 339 (Jan. 12, 2010, trace to plus one swelling in legs), p. 337 (Mar. 15, 2010, trace swelling in legs), p. 335 (Aug. 3, 2010,  trace swelling in legs), p. 332 (Aug. 24, 2010, trace swelling in legs), p. 327 (Nov. 3, 2010, trace swelling in legs), p. 585 (July 26, 2011, no swelling in legs) & p. 656 (Oct. 23, 2012, no swelling).

[33]*Id*. at p. 410 (Feb. 4, 2009, normal CT scan of brain), p. 273 (Feb. 12, 2009, negative MRI of brain) & p. 281 (Feb. 26, 2009, normal MRA of brain).

[34]*Id*. at pp. 628-30 (Feb. 8, 2012, she complains about classic fibromyalgia symptoms, but only 7 of 18 trigger points are tender).  *See also id*. at p. 687 (per second pain specialist, "I am not convinced she has fibromyalgia.  I palpated all the trigger points and she did not have tenderness in the areas.").

[35]*Id*. at p. 465 (Apr. 6, 2011, psychological examiner observed a normal gait), p. 585 (July 26, 2011, primary care provider observed a normal gait) & p. 605 (Feb. 21, 2012, per first pain specialist, Anderson said pain medication doesn't help with grinding hip pain when walking, but she walked into the office without any apparent distress), p. 686 (Apr. 13, 2012, second pain specialist found normal heel/toe walking) & p. 677 (July 18, 2012, normal heel/toe walking).

[36]*Id*. at p. 470 (evaluation by psychological examiner).

physician appointments."[37]  She alleges heart palpations, but she has no problem with

her heart.[38]  These inconsistencies weigh against Anderson's credibility.[39]

Anderson's symptoms improve when she complies with treatment,[40] but she

resists treatment, prompting her first pain specialist to write, "She remains opposed to

interventional techniques as she believes her pain travels from one area to another and

injections of any kind would not be helpful."[41]  Anderson's rheumatologist made a

similar observation: "The discussion appeared fruitless, as the patient was unwilling to

accept that the medications that I am offering her are hampered by the fact that she

continues to take narcotics and benzodiazepines."[42]  A reasonable mind would accept

---

[37]*Id*. at p. 606 (assessment by first pain specialist).

[38]*See, e.g.*, *id*. at p. 356 (Aug. 20, 2008, regular rate and rhythm without murmur), p. 353 (Jan. 20, 2009, regular rate and rhythm without murmur, gallop or rub), p. 346 (Oct. 26, 2009, regular rate and rhythm), p. 339 (Jan. 12, 2010, regular rate and rhythm), p. 321, Jan. 27, 2011,  regular rate and rhythm), p. 518 (Sept. 21, 2011, regular rate and rhythm with no murmurs or gallops), p. 629 (Feb. 8, 2012, cardiac auscultation entirely normal) & p. 635 (May 10, 2012, regular rate and rhythm, no murmur, rub or gallop).

[39]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[40]*See, e.g.*, SSA record at p. 462 (medications are helpful), p. 605 (medication improves pain by 60-70%), p. 648 (depressive symptoms are better),  p. 680 (hip pain relieved by sacroiliac injections) & p. 667 (at least 50% better).

[41]*Id*. at p. 598.

[42]*Id*. at p. 624.

the evidence as adequate to show Anderson can do sedentary work because her impairments can be controlled with treatment.

**Other impairments provide no basis for disability because Anderson does not comply with prescribed treatment**.  To obtain disability benefits, a claimant must follow prescribed treatment if treatment can restore the ability to work.[43]  "A failure to follow a recommended course of treatment also weighs against a claimant's credibility."[44]  Lack of financial resources sometimes justifies the failure to seek medical attention or to follow prescribed treatment, but such is not the case here.[45]  Anderson has been insured for several years; she has sought medical attention many times.

Anderson complains about fatigue, but failed to obtain the recommended sleep study.[46]  Doctors prescribed regular blood-sugar monitoring, but Anderson monitors her blood sugar sporadically.[47]  She complains about worsening eyesight, but she

---

[43]20 C.F.R. §§ 404.1530 & 416.930.

[44]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

[45]*Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989).

[46]SSA record at p. 356 (Aug. 20, 2008, she cancelled scheduled sleep study, but continues to complain about fatigue) & p. 518 (Sept. 21, 2011, endocrinologist discussed sleep study).

[47]*Id*. at p. 517 (Sep 21, 2011, she isn't exercising, checking her blood sugar levels, or taking prescribed medication as prescribed), p. 633 (Aug. 14, 2012, stressing importance of walking, checking blood sugar level, and medication compliance) & p. 655 (Oct. 23, 2012, checks her blood sugar sporadically).

doesn't comply with prescribed ophthalmological treatment.[48]  Doctors instructed her to

stop smoking, but she continues to smoke.[49]  If Anderson's symptoms were as severe as

she alleges, she would comply with prescribed treatment in order to alleviate her

symptoms.  A reasonable mind would accept the evidence as adequate to show

Anderson can do sedentary work because she does not comply with prescribed

treatment.

**Mental limitations provide no basis for disability**.  Anderson over-stated her

mental limitations.  She alleged impaired memory, but she demonstrated no memory

problems during her psychological exam.[50]  The psychological examiner estimated

Anderson's intellectual functioning as normal,[51] but non-agency IQ testing placed her at

---

[48]*Id*. at p. 444 (Nov. 6, 2009, compliant 50-60% of the time), p. 612 (Apr. 19, 2012, impression: primary open angle glaucoma, uncontrolled and progressive because she isn't compliant with treatment regimen) & p. 613 (May 29, 2012, impression: primary open angle glaucoma, control is borderline because she isn't compliant with treatment regimen).

[49]*Id*. at p. 236 (Feb. 6, 2009, otolaryngologist advised her to stop smoking; she has vocal cord irritation, most likely due to tobacco use), p. 581 (Dec. 5, 2011, primary care provider recommendation to stop smoking), p. 642 (Jan. 31, 2012, primary care provider recommendation to stop smoking), p. 687 (Apr 13, 2012, pain specialist's instructions to reduce cigarettes, start walking, eat less fats and carbohydrates, lose weight, and take multi-vitamins) & p. 656 (Oct. 23, 2012, endocrinologist reiterated importance of healthy lifestyle, medication compliance, and the cessation of smoking).

[50]*Id*. at p. 468.

[51]*Id*. at p. 467.

the low average range.[52]  A reasonable mind would accept this evidence as adequate to support the ALJ's limitations on sedentary work.

**Vocational evidence supports the decision**.  The ALJ asked a vocational expert about sedentary work for a person with Anderson's impairments.  The vocational expert identified jewelry preparer and document preparer as representative work.[53]  The vocational expert's response shows work exists that Anderson can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[54]  Because such work exists, Anderson was not disabled under social security law.

## Conclusion and Recommendation

A reasonable mind would accept the evidence as adequate to support the ALJ's decision; thus, substantial evidence supports the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Anderson's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

Dated this   29   day of December, 2014.

---

[52]*Id*. at p. 653.

[53]*Id*. at p. 49.

[54]42 U.S.C. § 1382c(a)(3)(B) (defining "disability" under social security law).

_____

United States Magistrate Judge